Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000532
16-DEC-2016
08:14 AM

NO. CAAP-15-0000532 AND CAAP-15-0000534

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

**CAAP-15-0000532**
STATE OF HAWAIʻI, Plaintiff-Appellant v.
JAYLORD PARRAS, Defendant-Appellee
(CR. NO. 14-1-0313)

AND

**CAAP-15-0000534**
STATE OF HAWAIʻI, Plaintiff-Appellant v.
JAYLORD PARRAS, Defendant-Appellee
(CR. NO. 13-1-1603)

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)

Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Suppress Statements (**FOF/COL/Order**), filed on June 19, 2015, in the Circuit Court of the First Circuit[1] (**circuit court**). By way of the FOF/COL/Order, the circuit court ruled that Defendant-Appellee Jaylord Parras (**Parras**) was improperly arrested without a warrant on October 28, 2013, and therefore suppressed statements Parras made following the arrest. In particular, the circuit court ruled that Parras's arrest did not fall under an exception provided by Hawaii Revised Statutes (**HRS**) § 803-5 (2014).

---

[1] The Honorable Glenn J. Kim presided.

On appeal, the State contends that (1) the circuit court abused its discretion by not allowing Detective Pinyo Phromsiri (**Detective Phromsiri**) to testify at the hearing on the Defendant's Motion to Suppress, such that the FOF/COL/Order should be vacated in its entirety and remanded for an evidentiary hearing; and (2) the circuit court's Findings of Fact (**FOF**) 6, 7, and 8 are clearly erroneous.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve the State's points of error as follows and affirm as set forth below.

## (1) Preclusion of Detective Phromsiri's testimony

In this case, the complainant contends that she was sexually assaulted by Parras, her half-brother. It is uncontested that the complainant met with Detective Phromsiri on August 26, 2013, for a tape recorded interview, and then again on October 3, 2013, at which time she identified Parras in a photographic lineup as the individual who had sexually assaulted her. The parties do not dispute that as of October 3, 2013, the police had probable cause to arrest Parras. It is also undisputed that Parras was arrested twenty-five days later, on October 28, 2013, without a warrant.

The State contends that although Parras was arrested without a warrant, the arrest falls within a warrantless arrest exception under HRS § 803-5.[2] The State argues that Detective Phromsiri's testimony would have shed light as to why Parras's

---

[2] HRS § 803-5 provides:

> §803-5 **By police officer without warrant.** (a) A police officer or other officer of justice, may, without warrant, arrest and detain for examination any person when the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise.
> (b) For purposes of this section, a police officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is being committed.

2

arrest fell within the HRS § 803-5 exception. Specifically, the State asserts Detective Phromsiri would have testified as to the obstacles he faced in effectuating Parras's arrest. The State thus argues that the circuit court abused its discretion by not allowing Detective Phromsiri to testify. The State also contests the circuit court's conclusions of law (**COL**) 4 through 9, which state:

> 4. Between the time the Complainant selected the Defendant in the photographic line-up on October 3, 2013 and the time of the Defendant's arrest on October 28, 2013, the police had no obstacle preventing them from making the arrest of the Defendant.
>
> 5. By waiting until October 28, 2013 to arrest the Defendant, the police also waited a significant amount of time before making the warrantless arrest.
>
> 6. The warrantless arrest in this case violated the warrant requirement of HRS § 803-1 and was therefore an illegal arrest.
>
> 7. The exception to the arrest warrant requirement provided by HRS 803-5 did not apply to the arrest made in this case.
>
> 8. The Defendant's October 28, 2013 statement to Detective Phromsiri, made within hours of his arrest, was obtained as a result of the illegal, warrantless arrest.
>
> 9. Therefore, Defendant's October 28, 2013 statement to Detective Phromsiri must be suppressed.

(Citation omitted.)

The crux of the State's argument is its reliance on State v. Keawe, 107 Hawai'i 1, 108 P.3d 304 (2005), in which the Hawai'i Supreme Court analyzed the application of HRS § 803-5. In Keawe, the defendant provided two "lap dances" to an undercover police officer at a nude-dancing establishment on July 25, 2002. Id. at 3, 108 P.3d at 306. She was not arrested that night, and instead was arrested twenty days later without a warrant. Id. The supreme court held that the defendant's arrest was unlawful. Id. at 4, 108 P.3d at 307.

As explained by the supreme court in Keawe, HRS § 803-1 (2014) sets out the general rule, which provides that: "No arrest of any person shall be made without first obtaining a warrant or other process therefor from some magistrate, except in the cases

3

provided in this chapter or otherwise provided by law." 107 Hawai'i at 5, 108 P.3d at 308. In turn, HRS § 803-5 provides an exception to HRS § 803-1, but one which has a "temporal restriction" on the police's power to make a warrantless arrest. Id. at 5-6, 108 P.3d at 308-09 (emphasis added).

The supreme court also reasoned that HRS §§ 803-2 through 803-4 provide exceptions to HRS § 803-1, and like those sections, an "element of immediacy is present in HRS § 803-5 as well, allowing a warrantless arrest where the police observe a crime in progress or develop probable cause to believe a crime has just occurred." Id. at 6, 108 P.3d at 309 (emphasis added).

As the State points out, the Keawe opinion also notes that "[w]e limit our holding to those cases, like the instant case, in which the police have probable cause to arrest, have no obstacle preventing them from making the arrest, and wait a significant amount of time before making the arrest." Id. (emphasis added). The Keawe opinion further states:

> Other types of delays may be proper: for example, if the delay between the development of probable cause and the arrest occurs because the police are attempting to identify, locate, or apprehend a defendant, the arrest will satisfy HRS § 803-5. However, if the police believe that waiting days or weeks to arrest a defendant is the most appropriate action under the circumstances, as occurred in the instant case, then the police cannot rely upon HRS § 803-5 and must obtain a warrant pursuant to HRS § 803-1.

Id. (footnote omitted).

In the instant case, the State contends that, unlike the police officer in Keawe, Detective Phromsiri was confronted with obstacles in effectuating Parras's arrest after probable cause was established because Parras could not be located. Thus, the State asserts Keawe is distinguishable because the defendant easily could have been arrested after the lap dance, whereas here Parras could not be located for some time and the delay in arresting him was not for tactical reasons.

Although the State makes a reasonable argument given part of the discussion in Keawe, we believe the "temporal restriction" in allowing for a warrantless arrest under HRS

4

§ 803-5 cannot be ignored and is of primary concern. Indeed, in State v. Line, 121 Hawai'i 74, 214 P.3d 613 (2009), the supreme court further analyzed its ruling in Keawe and held that police improperly attempted to arrest an individual without a warrant sixty-three hours after there was probable cause to arrest him, even where the individual had clearly evaded the police efforts to arrest him in the prior days. The supreme court stated in relevant part that: "63 hours between the inception of probable cause and the July 15, 2005 attempted arrest afforded police ample time to obtain an arrest warrant and they were plainly required to do so before invading Petitioner's home." Id. at 84-85, 214 P.3d at 623-24.

Given our analysis of Keawe and Line, and the circumstances established in the record, we conclude that the circuit court did not abuse its discretion in not allowing Detective Phromsiri to testify. The circuit court admitted into evidence and considered exhibits that included the C.I.D. Closing Report of Detective Phromsiri and a Judicial Determination of Probable Cause for the Extended Restraint of Liberty of Warrantless Arrestee (which included Detective Phromsiri's Arrest Affidavit).

The circuit court also received and accepted the State's offer of proof as to the obstacles Detective Phromsiri confronted. The purpose of an offer of proof is to "provide an adequate record for appellate review and to assist the trial court in ruling on the admissibility of evidence." State v. Pulse, 83 Hawai'i 229, 248, 925 P.2d 797, 816 (1996) (emphasis omitted). Importantly, the circuit court asked the State for an offer of proof:

> THE COURT: Can I have an offer of proof.
>
> [STATE]: He will testify to the course of his investigation in this case, that he did meet with the complaining witness in August.
>
> It took him some time to generate a photographic lineup, and then as soon as he --

Following this exchange, the circuit court confirmed with the parties that the complainant was interviewed on August 26, 2013, that the complainant identified Parras in a photographic lineup on October 3, 2013, that there was probable cause for the arrest as of October 3, 2013, and that Parras was arrested on October 28, 2013.  The circuit court again asked the State for an offer of proof.

> THE COURT: Okay. So what's the further offer of proof?
>
> [STATE]: Your Honor, well basically, the detective will testify to the facts that are included in the State's memorandum in opposition, that he did make multiple attempts between October 3rd and October 28th.
>
> THE COURT: Tried to find him at his workplace a couple of times?
>
> [STATE]: That's correct, and then he tried to locate[] him at his girlfriend's home, but then he didn't have the address there, and when he finally received that address, he was informed by the complainant and the mother that this defendant was now back at home.
>
> THE COURT: So as you say, basically the facts you set forth in your -- is it your statement of facts?
>
> [STATE]: Yes, Your Honor.
>
> THE COURT: That's part of your memorandum in opposition?
>
> [STATE]: That's correct.
>
> THE COURT: That's what he would testify to?
>
> [STATE]: That's correct, Your Honor.
>
> THE COURT: Anything else?
>
> [STATE]: Nothing further from the State on that.

After the offers of proof, the circuit court stated that "[b]ased on the offer that the State has made, I don't need to hear from the detective as far as I'm concerned."

On this record, the circuit court did not abuse its discretion when it decided it did not need to have Detective Phromsiri testify.  Probable cause was established on October 3, 2013, and Parras was arrested without a warrant twenty-five days later, on October 28, 2013.  Even if Detective Phromsiri

6

testified to his attempts to locate Parras during those twenty-five days, and even though the delay in locating Parras was an obstacle to arresting him, we cannot say that a warrantless arrest twenty-five days later is appropriate under HRS § 803-5. Rather, under Keawe and Line, the police were required to obtain a warrant by the time Parras was arrested in this case.

**(2) Alleged erroneous findings of fact**

As the State notes in its opening brief, its challenge to FOF's 6, 7, and 8 appear to be immaterial to the outcome of this appeal. We therefore decline to address the State's challenge to FOF's 6, 7, and 8, without prejudice to the State addressing those issues in the future if necessary.

Therefore,

IT IS HEREBY ORDERED that the Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Suppress Statements filed on June 19, 2015, in the Circuit Court of the First Circuit is affirmed as set forth above.

DATED: Honolulu, Hawaiʻi, December 16, 2016.

On the briefs:

Brandon H. Ito,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellant.

Taryn R. Tomasa,
Deputy Public Defender,
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

7